MEMORANDUM OF DECISION
MANFREDI, J.
This case was brought pursuant to a complaint dated May 9, 2008. The complaint alleges that the plaintiff sustained personal injuries as a result of a fall at the Season’s Buffet on August 11, 2007.
Plaintiff claims that she fell on syrup that was on the floor in front of a self-service counter at the buffet and that the defendants knew or in the exercise of reasonable care, should have known of the hazardous and dangerous condition caused by the syrup and failed to correct it.
The matter was tried to the court on November 16, 2010.
DISCUSSION
This case is brought pursuant to the Mohegan Torts Code, Article IV, Chapter 3, as adopted by Resolution No. 2007-17 of the Mohegan Tribe of Indians on April 18, 2007. It is the sole means to adjudicate tort claims against the Authority. Under the definition set out in the code the term negligence means:
“Conduct that falls below the standard established by law or custom for the protection of others against under reasonable risk of injury or harm. The standard of conduct to which a person must conform to avoid being negligent is that of a reasonable person under similar circumstances. Where applicable, the rule of actual or constructive notice shall be applied to determine negligence; negligence shall not be deemed to arise from the mode of operation.”
Mohegan Tribe Code Section 3-52 states that the law to be applied by this eourt is the law set forth in the Mohegan tribal ordinances or regulations; the Connecticut General Statute’s, and; the Connecticut common law, insofar as the state laws and *241 cases do not conflict with any of the Mohegan law.
The law of premises liability as developed in Connecticut has been adopted by this Court, except for the mode of operation as noted above. In discussing premises liability this Court has stated:
“As noted in Connecticut Law of Torts, 3 rd Ed., Wright, et al., Section 49, the possessor of the land owes a duty to invitees to inspect the premises and is liable for defects which would be discovered by a reasonable inspection. However, “even an invitee must show that the defect has beeh present for a sufficient period of time so that the land possessor has had the opportunity to discover it.”
“This court has had several occasions to interpret and apply the doctrine of constructive notice in the past.... In order to successfully prosecute a claim such as the Plaintiffs there must be more evidence than the mere presence of a foreign substance on the floor. There must be some evidence to conclude that the object or substance had been on the floor for a “sufficient period of time so that the land possessor had the opportunity to discover it.” Schiff v. MTGA, 2 G.D.R. 117, 6 Am. Tribal Law 519 (2005) (internal citations omitted)
FINDINGS OF FACT:
The plaintiff was born on June 29, 1948, is married and has three grown stepchildren. She is currently employed at as an assistant buyer for Wes Garde, a lighting distributor, and had been previously employed by Aetna Insurance in its annuity department.
She has made no prior personal injury claims and has had no prior injuries as a result of any accidents. Her health prior to the incident and 2007 was good and she would “walk the mall” in Manchester with her husband at least once a week.
August 11, 2007 was her 23rd wedding anniversary and she arrived at the Mohegan Sun Casino with her husband that day planning to go to breakfast, gamble, and then to dinner. She had been at the casino many times before. Their first stop was at the Season’s Buffet and they arrived there before 11 a.m.
The plaintiff had gone to the buffet line, obtained her food and was walking back to her table when she turned to look back at her husband who has difficulty walking. She slipped and fell hard landing on her left side. She was assisted to a nearby table and when the paramedics arrived she was unable to stand upon her left leg.
After her fall the plaintiff observed syrup on the floor at the place where she fell. She had no syrup on her own tray and it is undisputed that the syrup on the floor did not come from the plate which she dropped. A female employee who had come to assist her went back and observed the syrup on the floor also. The plaintiff testified that the area of syrup that she observed was approximately 4 to 5 inches in diameter. Defendant’s Exhibit 3 was a video of the area where the plaintiff fell on the day in question. The court observed the video during the testimony and in preparing this decision the Court again reviewed the video in depth.
The video commences at 10:30 a.m. and highlights the area of the fall for a full 20 minutes until the plaintiff fell at 10:50 a.m.
The court has carefully reviewed the video and was unable to observe any spills during the period of time the video depicted. It is the court’s conclusion therefore that the spill of syrup occurred prior to 10:30 a.m. on August 11, 2007, at least 20 minutes prior to the plaintiffs fall.
*242 As a result of the fall the plaintiff was brought to William W. Backus Hospital in Norwich and admitted. She had fractured her hip and underwent surgery the next day during which pins were implanted into her hip which remain there to the present time. She was an in-patient at Backus for approximately 1 week and then transferred to Manchester Manor for another week for rehabilitation and physical therapy. After her discharge from Manchester Manor she returned home and was confined to a chair in her living room except for medical appointments for some period of time and she used a walker to get around when necessary.
During her convalescence she slipped and fell over a railing while coming home one day. She held the rail and hit her back on the stairs but sustained no new injury. She received physical therapy at Manchester Hospital two times a week for a period of time and after she ceased using a walker needed to utilize a cane for support. She returned to work on November 7, 2007 still using a cane and had used all her vacation and sick time. She was able to get around without using a cane early in December of 2008.
At the time of trial in November of 2010 her left hip still ached and she stated that she avoids lifting her four grandchildren and one great grandchild due to the injury. She no longer does any more walking, squatting, or kneeling. The plaintiff, prior to the incident, also was a square dancer but no longer square dances.
The plaintiff is anxious and concerned that the injury is wearing on her hip and may require further surgery in the future.
Much of the trial consisted of expert testimony from Steven Rosen, an expert put forth by the plaintiff and Michael Miller and expert put forth by the defendant. Mr. Rosen concluded that the plaintiffs fall was a foreseeable event due to the lack of mats at the buffet service area. He opined that a mat could have prevented the accident and rendered an unreasonably unsafe area safe at little cost. Mr. Rosen also testified that the buffet is an “attractive display” utilized by vendors who want to attract customers to their product. He indicated that most people have a narrow central vision rather than peripheral vision and will be looking ahead and not notice what’s at their feet. He testified that it was not normal to be looking down unless there was a detectable warning present.
Based on his viewing and reviewing of the video, Mr. Rosen opined that there was no unreasonable conduct on the part of the plaintiff and he would not have expected her to be looking down.
David Atkinson, the Building Official for the Mohegan Tribe testified that the there is nothing in the building code prohibiting a tile floor at the buffet nor anything requiring mats to be utilized.
Richard Zazzaro the Defendant’s Vice President for Food and Beverage testified that the area where the plaintiff fell is near the hot food service where chafing dishes and a grill are located. The maple syrup would be located on the end of the counter to the left of the scene in the videos. Mr. Zazzaro also testified that in his opinion a buffet area should be tiled as they are more easily able to be cleaned. In his review of buffets in Las Vegas casinos all of the buffets he saw were tiled floors and not carpet.
Michael Moore Miller, the defendant’s expert witness, is a self-employed consulting engineer. It was his testimony that the floor at the Season’s Buffet had adequate lighting and that utilizing mats to prevent falls was not a safe practice. There were inherent hazards in using mats because mats can curl and require more maintenance than a tile floor.
*243 CONCLUSIONS
Although the parties devoted much of their time and effort at trial to the issues presented by the experts regarding the use of mats at a buffet line, it is not necessary for the court to address that issue as it reaches its decision regarding liability based on the peculiar facts of this case. In any event the court finds no duty as that term is defined in the Mohegan Torts Code to set out mats at their buffet line based upon the circumstances of this case. Under the code, duty is defined as “an obligation, to which the Mohegan Tribal Courts are authorized to give legal recognition and effect, to conform to a particular standard of conduct.”
This case is very similar to that of Morris v. King Cole Stores, 132 Conn. 489, 45 A.2d 710 (1946). In that case a customer had fallen on an area of fresh strawberries and lettuce leaves spread out upon the defendant’s floor. The issue was not whether the floor was dangerous and defective as a result of the strawberries and leaves on the floor but whether the defendant had constructive notice of the condition. The court stated:
“The controlling question is that of constructive notice: whether the condition had existed for such a length of time that the defendants employees should, in the exercise of due care, have discovered it in time to have remedied it.... There is no direct evidence as to the length of time the defect had existed, and therefore the claim is that from the evidence concerning the condition of the substance that it was dirty and “looked as though several people stepped on a before,” and that the lettuce stuck to the floor—the jury could reasonably find constructive notice.” (Internal citations omitted)
In the instant case there is no dispute between the parties that there was an area of syrup on the floor which caused plaintiff to fall. The dispute centers around whether or not the syrup was on the floor for a sufficient amount of time for the defendant to have discovered it and remedied it.
Based upon this Court’s observation of the video entered into evidence, it is the court’s conclusion that the area of syrup on the floor had been there for at least 20 minutes prior to the plaintiffs accident. The Court carefully observed the video from 10:30 a.m. through 10:50 a.m. and saw no evidence of any one spilling or dropping anything on the floor in the area of the plaintiffs fall during that period of time. Therefore, the court must conclude that the spill occurred prior to 10:80 a.m. Under the circumstances the Court concludes the defendants had sufficient time to have discovered the area of syrup and cleaned it up prior to the plaintiffs fall. In fact, during the 20 minute period of time of the video at least two of the defendant’s employees are observed in the area of the fall without discovering the area of syrup that must have existed there at the time. The court also notes that just prior to the plaintiffs fall another customer is seen in the video looking down at the area where the plaintiff subsequently did fall leaving the court to conclude that the syrup was certainly there and able to be observed.
Based upon the foregoing the court finds the defendant liable to the plaintiff for the injuries sustained in her fall on August 11, 2007. The court also finds that the plaintiff was contributorily negligent in the amount of 25%. This is based upon the plaintiffs testimony that just prior to her fall she turned around and was looking back when she fell.
The court finds the following actual damages:
*244 Medical bills are set forth in Plaintiffs Exhibits 1 through 10, totaling $28,554.50 and lost wages of $5,733.00 computed as follows: 13 weeks times $441.00 per week for a total amount of actual damages of $34,287.50. Pursuant to Section 3-251(c) of the Torts Code in effect at the time of the incident actual damages are to be reduced by collateral source payments which in turn are reduced in proportion to claimant’s contributory negligence. The court finds that Plaintiff received $3,150.00 in collateral source payments by way of disability (Plaintiffs Exhibit 17) computed at $350.00 per week for 9 weeks, which is reduced by 25% to $2,632.50. Actual damages to be awarded are therefore $31,925.00.
Pursuant to Section 3-251 (a)(3) non-economic damages may not exceed 200% of actual damages prior to any reduction for collateral source payments. The Court finds that the plaintiffs non-economic loss, in light of the severity of her injuries, exceeds the maximum award of 200% of actual damages permitted by MTC § 3-251(a)(3), and therefore she is entitled to $68,575.00 in non-economic damages.
The award for damages is therefore as follows:
31,925.00 Actual damages
68,575.00 Non-economic damages
100,500.00 Total Damages ⅛⅞
($25,125.00) Less 25% Contributory Negligence
75,375.00 Net Award -¾⅞-
Judgment may enter on behalf of the plaintiff and against the defendant in the amount of $75,375.00.